The Liverpool and London and Globe Insurance Company *v.* Morris.

To an action on a policy of insurance, the company having pleaded that it was issued upon the condition stated in the application therefor, made by the plaintiff, that he would keep his books, inventories and accounts in an iron safe or remove them from the insured house at night, but that he failed to do so, and in consequence of his neglect his books (showing a record of his business, including all purchases and sales), as well as a copy of his last inventory, were destroyed by fire which occurred in the night, and that the policy was thus rendered void; and the plaintiff's repli-

cation being that this condition was not embraced in his application for the policy but was inserted therein by fraud of the company, without his consent, and without his knowledge until after the fire occurred; and the issue thus formed being the main one and having been made prominent to the jury by a fair charge, and the evidence sustaining their verdict, and the judge having refused to grant a new trial, his judgment does not appear to be erroneous. July 7, 1890.

Verdict. Insurance. Fraud. Before Judge SMITH. Muscogee superior court. May term, 1889.

A report of this case, when it was formerly before the Supreme Court, will be found in 79 *Ga.* 666. After that decision was rendered, the declaration was amended. The policy sued on recites that "It is understood and agreed that the assured shall keep a set of books showing a record of his or their business, including all purchases or sales both for cash or credit, as well as a copy of last inventory, to be kept in an iron safe or removed from store at night; special reference being had to assured's application, which is hereby made a warranty and part hereof, attached to and made the written part of" this policy. The application was a blank form of the company. It contained a number of questions to be answered by the applicant, with blank spaces opposite them for the answers. Next to each of the following questions appeared the word "yes" written in ink: "Do you keep account of purchases and sales? Will you agree to keep your account-books in fire-proof safe, or keep them outside of building every night? Will you agree to keep your last two inventories in a fireproof safe, or keep them outside of building every night?" To the question, "Give date and amount of last inventory?" appeared the answer, "Sept. 1st, 1885, $1,000.00."

The amendment to the declaration alleged as follows: By the policy of insurance the application therefor is made a part of this contract and a part of the policy. The application made by plaintiff

for a policy did not, when signed and agreed to by him, contain any condition in reference to keeping his books and invoice of stock in an iron safe, or removing them from his store at night; and the interrogatory in said application, "Will you agree to keep your account-books in fire-proof safe or take them out of building every night?" was never propounded to or answered by him; and at the time he signed the application the answer to this interrogatory was blank, and the answer "Yes" to said interrogatory was written in the application by defendant after it was signed and agreed to by petitioner, and without his knowledge, authority or consent. The same is true as to the interrogatory, "Will you agree to keep your last two inventories in a fire-proof safe, or keep them outside of building every night?" Nor has he, since the insertion of said answers, ratified, condoned or in any way consented to the same. He was ignorant that said condition was in the policy of insurance, and at the time the application was signed by him he refused to take a policy with said conditions therein. Defendant, well knowing of said refusal, agreed to issue said policy without these conditions, and then and there the application was signed by plaintiff without said conditions expressly and knowingly and intentionally by defendant. There was no legal or binding condition in the policy to the effect that he was to keep his books in any iron safe, or remove them from the store at night, and such conditions were placed there by fraud on the part of defendant, and plaintiff knew nothing of them until after the loss by fire, nor did he afterwards ratify or condone the same.

The defendant amended its pleas as follows: The policy contains and is issued with the conditions upon its face, and as a part thereof, that plaintiff should keep a set of books, as well as a copy of his last inventory, to be kept in an iron safe or removed from the store at

night. Plaintiff failed and neglected to perform these conditions, in consequence of which his books, showing the record of his business, as well as a copy of the last inventory, were lost and destroyed by fire, which occurred in the night-time, thereby rendering the policy null and void, plaintiff having carelessly and negligently left the books and copy of the inventory in the store at night, the same not being kept in an iron safe or otherwise kept in such manner as to preserve them against fire, whereby they were consumed.

The plaintiff testified that Wood, solicitor of insurance for the agent of defendant, came to him and wanted to insure his stock of goods, to which he agreed. When Wood went to make out the application, he picked up a paper and asked plaintiff if he had an iron safe. Plaintiff replied that he had not and did not expect to have one. Wood asked when he had taken an inventory of his stock, and he replied, in September. Wood threw down that blank, said they asked so many foolish questions he always hated to get hold of them, and picked up a second blank. Not a word was said about the iron safe, and the clause was not in either one when plaintiff signed the application. The affirmative answer to the question as to keeping the account-books in a fire-proof safe or out of the building every night, was not in the application when he signed it, and the "Yes" is not in his handwriting. The same is true as to the answer "Yes" to the question as to keeping the last two inventories in the fire-proof safe or outside of the building at night. When Wood picked up the second blank, he did not ask any questions about books or iron safe. The answers to the questions were blanks. Plaintiff never saw the application after he signed it, until after the fire. He did not consent to the affirmative answers above mentioned being put in the application, and did not know of it until after the fire. At

the time of the application there was no agreement or understanding about taking the books or inventories from the store at night. Wood did not say a word to plaintiff about removing the books at night. The other questions contained in the application were asked plaintiff, and he answered them; the two hereinbefore referred to were not asked. Wood took up the application and read it to plaintiff and asked if he kept an iron safe, and plaintiff answered, "No, and did not intend to have." Wood threw the application aside, and did not read any more questions from it. Then he took up the one in evidence and read it over to plaintiff, who did not read it; Wood read it all over to him. If there was any question about the iron safe, he did not ask it, did not read it. As Wood read it over plaintiff answered, and Wood put down the answers. Plaintiff saw what he read, the most of it. He did not ask plaintiff the two questions about keeping the books or taking them out of the store, and plaintiff did not say anything about it either; not a word was said about it. When plaintiff signed the application, Wood never called over the two questions to him, and he does not think they were signed then; if they were there, he did not see them; did not examine the application to see whether the two answers "Yes" were on it when he signed it. The only reason he thinks they were not on it is because Wood did not ask the questions. After Wood had asked the questions and written the answers, he gave plaintiff the paper, and he signed it; he did not read it over because he did not think it necessary, but signed it without investigating the questions and the answers he gave. He kept books and kept an account of what he sold, whether for cash or credit; also of what he bought; kept the books in his desk; did not take them out and carry them home; they were burned. Took an inventory in September; it was $1,000, and it

also was burned. Hawks adjusted the loss; demanded plaintiff's books and inventory, and plaintiff told him they were burned. Hawks made a written statement of the facts, which plaintiff swore to. The statement was read over to him and he signed it. He can read and write.

The defendant put this statement in evidence. Among other things therein, plaintiff said that at the time of signing the application for insurance, he truthfully answered all questions asked him and was fully advised of the contents of the same both "as to the contents and agreements"; that he kept books of account, and these books were destroyed by fire; that if he had these books, he could make out an exact account of his loss; without them he could not, and could only estimate the amount of stock on hand which was destroyed; and that neither the company nor the assured waived any of their rights because of this deposition. There was testimony that the policy was issued upon the written application and that, under instructions from the company, the application would not have been forwarded by the agent and the policy would not have been issued unless upon the representations contained in the application, and especially that one called "iron safe clause." Wood testified that he took the application for insurance, acting in the capacity of sub-agent; Iverson was the agent, and Wood was taking the applications and sending them in to him. He took so many applications that he could not remember the particulars of what transpired between the plaintiff and himself at the time this was taken; whether he read over any other application than the one in 'question or not. He usually wrote down the answers to the questions. The answer "Yes" to the question of keeping the inventories in a fireproof safe or outside the building at night, he thinks is his writing. The answer "Yes" to the question as to

keeping the account-books in a fire-proof safe or taking them out of the building every night, is his handwriting. He did not write the answers after plaintiff signed. After the application was signed, he forwarded it to Iverson. If he wrote these answers "Yes," they were written before plaintiff signed. The handwriting does not look like any one's else that witness knows; it is not Miss Iverson's writing; some of the answers to the questions are in her writing. The only difference in the writing of the "Yes" to the two questions is, one is a little paler than the other when viewed under the microscope; they both look like witness's handwriting and not like that of Iverson or Miss Iverson, nor any one else that he knows. He was at plaintiff's store several times, but does not remember whether before or after the application was signed. Does not remember ever to have seen the policy, or to have spoken to plaintiff after taking the application. Remembers making an estimate of the value of the stock before the application, because he went there for that purpose and was at the store after the application, but does not remember the date. There was no agreement between him and the plaintiff that any certain policy with any particular conditions, or anything of the sort, was to be in the policy—other than as contained in the application. On the former trial witness stated that there was no iron safe in the store. He had examined the stock, and it was a good risk. Does not remember whether there were two inkstands or not; the ink in the signature of plaintiff is about the same color of one of the answers "Yes," and darker than the other. Both answers "Yes" are witness's handwriting. He did not write the word "Yes" in answer to the question, "Do you keep account of purchases and sales?" nor to the question, "Was the building in good repair?" The blank was fresh when he took it to fill it up. The wit-

ness then testified as to certain answers which were in the application when he forwarded it to the agent at Columbus, and stated that others were filled in after the application was forwarded and after plaintiff had signed it, and that the answer as to giving date and the exact amount of the last inventory was written after plaintiff had signed it. The answer "Yes" to the question as to agreeing to keep the account-books, etc., was in witness's handwriting, and he could only judge by the handwriting; from the circumstances and face of the application, would say he wrote it at plaintiff's place. Does not pretend to recollect what took place when the application was signed. The application had to be sent to the company's office at New Orleans, and if they approved it, the policy would be sent to Iverson and he would sign it. If there were less ink on the pen, it would make the writing thinner and might make it paler; but witness could not answer positively. He did not write the answer "Yes" to the question, "Will you agree not to put ashes in wooden vessels?" This is a material question, and companies would not insure without it.

A daughter of Iverson, the agent of the defendant at Columbus, was clerk for him in the insurance business. It was her duty to fill out the blanks in making out and issuing policies of insurance. The instructions given by her father were to have the "iron safe clause" in every policy issued on risks outside of towns having a fire department. Such instructions were imperative; she did not remember how they were given, whether by letter or printed circulars. She wrote the answers in the application under the head of building and occupancy, heating and expenses, and to the questions about ashes, "Do you keep account of purchases and sales?" and "Give date and amount of last inventory?" and whether the risk had ever been declined. The answers

to the other questions not mentioned above, are in the handwriting of Wood. None of these answers were written after the application came to the office of her father signed by the applicant. She wrote the answers before the application was signed. She is familiar with Wood's handwriting. Does not know how long after application was received before the policy was issued or sent to plaintiff. The clause as to the iron safe was put in the policy because her father had no authority to issue a policy on such a risk without putting it in. Policies were issued by him without referring the application to the company after issuing the policy.

Hawks testified that the company refused to pay because of the breach of warranty by plaintiff, and for this reason he did not adjust the loss; that he did not demand any affidavit of plaintiff, but told him that if he saw proper to write out a full statement of the case, it would be referred to the company, which was done; and that plaintiff also stated that if the books had not been destroyed, he could show his loss exactly, that he had the last inventory with the books when they were destroyed, and that it was his custom to remove his books to his dwelling-house at night, as this was the requirement of his policy.

Three witnesses testified in support of the plaintiff's good character. The jury found for him the amount sued for, which included damages and attorney's fees, as well as principal and interest. To the refusal of a new trial the defendant excepted.

PEABODY, BRANNON & HATCHER, for plaintiff in error.

L. F. GARRARD, contra.

BLANDFORD, Justice.

This was an action brought by the defendant in error against the plaintiff in error to recover a sum of money due upon a policy of insurance. The main defence relied upon by the insurance company was that Morris,

in his application for insurance, agreed to keep his books, inventories and accounts in an iron safe or to remove the same from the store at night; that he failed to do so, and in consequence of such neglect on his part, his books (showing a record of his business, including all purchases and sales, both for cash or credit), as well as a copy of the last inventory, were lost or destroyed by fire, which occurred in the night-time; and thereby said policy of insurance was rendered void. And furthermore, that said policy of insurance—the foundation of plaintiff's action—was issued upon the same conditions and stipulations. The replication to this plea on the part of the defendant in error was that this condition or stipulation was not embraced in his application for the policy of insurance, and that the same was inserted therein by fraud on the part of the plaintiff in error, without his knowledge or consent, and that he did not know any such agreement was embraced in the policy of insurance until after the loss by fire. This was the main issue in the case, and the presiding judge, by his instructions to the jury, made the same prominent, having charged the jury as to its importance, and submitting the same fairly for their determination. The jury found against the plaintiff in error, and that the replication of the defendant in error was true in this respect. We are satisfied that, under the evidence submitted upon the trial, the jury had a right to find as they did in this case; and the judge of the superior court having refused to grant a new trial, which is excepted to by the plaintiff in error, we think he committed no error in so doing and the judgment of the court below is therefore          *Affirmed.*